# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IMPERIAL CRANE SALES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15 C 859 |
| | ) | |
| SANY AMERICA, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is the motion of Defendant Sany America, Inc. ("Sany") to dismiss this action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), based on an arbitration provision in a "Distributor Agreement" between Sany and Plaintiff Imperial Crane Sales, Inc. ("Imperial"). Sany's Motion asserts that "Imperial and SANY agreed to submit any disputes arising from their commercial relationship to arbitration in Atlanta, Georgia." *See* Def. Mot., Dkt. 8, at 1. Three days after the briefing on this motion was concluded, Imperial filed an arbitration demand with the American Arbitration Association ("AAA") in Atlanta, in which Imperial admits that its demand there "includes the claims" it brings here. *See* Def. Supp. Ex. A, Dkt. 26-1, at 1. Sany contends in the instant motion to dismiss this case that "it is for the arbitrator, and not this Court, to determine whether Imperial's claims are covered by or within the scope of the arbitration agreement." Def. Mem., Dkt. 9, at 7-8.

For the following reasons, the Court agrees with Sany that the arbitrability of Imperial's claims should be determined in the AAA proceeding now pending in Atlanta. The Court disagrees, however, that the instant action should be dismissed before that determination is made, and thus grants Imperial's request, pursuant to 9 U.S.C. § 3 of the Federal Arbitration Act (the "FAA"), to stay this action pending a determination of arbitrability in the Atlanta proceeding. *See* Pltf. Resp., Dkt. 18, at 12-13. Accordingly, Sany's motion to dismiss (Dkt. 8) is denied without prejudice pending the determination of arbitrability in the Atlanta proceeding, during which time this action will be stayed.

## **BACKGROUND**[1]

Imperial "is a distributor, supplier and lessor of cranes, and related equipment and machinery," Compl., Dkt. 1-1, ¶ 1; and Sany "is in the business of selling cranes and heavy equipment." *Id*. at ¶ 2. Imperial's claims in this case concern three purchases of cranes from Sany. Pltf. Resp., Dkt. 18, at 1. Imperial's first purchase—for a Sany "crawler crane"—is evidenced by a March 17, 2011 letter from Imperial to Sany reciting "the purchase of one new Sany model . . . crawler crane for the sum of $2,100,000.00 USD, subject to" various conditions, including those "outlined in the attached 'Floor Plan Financing' agreement." Chen Decl. Ex. A, Dkt. 10, at 6-7.

---

[1] For purposes of this motion, the Court accepts as true all well-pleaded factual allegations in Imperial's Complaint, and draws in Imperial's favor all reasonable inferences therefrom, and from the parties' submissions on this motion. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806, 809-10 (7th Cir. 2011) (Rule 12(b)(3) motion requires "construing all facts and drawing reasonable inferences in favor of the plaintiffs," but does not "limit" court's "consideration" to the pleadings).

Among other things, this financing agreement stated that a "Dealer Agreement must be signed and in place before delivery." *Id.* at 7. Notwithstanding this stated condition, however, Imperial and Sany did not sign their Distributor Agreement until July 5, 2011, three months after the crawler crane was delivered to Imperial on or about March 30, 2011. *See* Pltf. Resp., Dkt. 18, at 3, 5; Chen Decl. Ex. B (Distributor Agreement), Dkt. 10, at 24. But the Distributor Agreement they ultimately signed included the following integration clause addressing such earlier agreements: "This Agreement, together with any and all exhibits hereto ***and Purchase Orders***, constitutes the entire agreement of the parties hereto with respect to the subject matter herein and therein, and supersedes all prior oral or written agreements. Any and all exhibits hereto and Purchase Orders completed pursuant to Section 1.4(a) hereof are hereby incorporated by reference into this Agreement." Dkt. 10, at 22, § 5.2(a) (emphasis added). In addition, this Distributor Agreement also included an arbitration provision requiring that "any and all controversies or claims arising out of or relating to this Agreement shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." *Id*. at § 5.8.

In the months following the parties' execution of this Distributor Agreement, Imperial made its second and third purchases from Sany—for various "rough terrain cranes"—in November and December 2011, with delivery "commencing in early February 2012." Compl., Dkt. 1-1, ¶¶ 45-46, 52-55, 58-60, 63, and Exs. 2-4, Dkt. 1-1, at 23-28. But according to Imperial's Complaint, at least some of the cranes delivered

3

"suffered from significant manufacturing deficiencies" and "were not in the condition as warranted." Compl., Dkt. 1-1, ¶ 65. When "repairs and servicing" of these cranes "proved unsuccessful," Imperial notified Sany "of its revocation of acceptance of these cranes," *id*. at ¶ 74; Sany "acknowledged the issues" with the cranes and "accepted Imperial Crane's revocation of acceptance," *id.* at ¶ 76; and Imperial canceled its remaining order for additional cranes. *Id*. at ¶ 78. As a result, Imperial was allegedly "forced to find and purchase" other rough terrain cranes at a higher price, "rent substitute cranes" while awaiting delivery of these replacements, and "lost revenue" while substitutes were unavailable. *Id*. at ¶¶ 79-84.

Similar issues allegedly plagued the crawler crane that was the subject of Imperial's first crane purchase from Sany. According to Imperial's Complaint, shortly after this purchase, Sany notified purchasers of this crane (including Imperial) of certain limitations preventing the crane's use in specified applications. *Id.* at ¶ 32. In addition, other deficiencies with the crawler crane "became apparent over time," *id.* at ¶ 34; and "repairs ultimately provided by Sany America did not resolve the deficiencies." *Id.* at ¶ 38. As a result, Imperial was allegedly again "forced to rent other cranes to substitute," "lost rental revenue," and "incurred substantial labor expense servicing and repairing deficiencies with the Crawler Crane." *Id*. at ¶¶ 40-44. Following these issues, and the foregoing issues with the rough terrain cranes, Sany allegedly terminated the parties' Distributor Agreement in 2013, *see* Pltf. Resp., Dkt. 18, at 12; Def. Reply, Dkt. 20, at 6-7. This litigation then ensued in 2014.

## PROCEDURAL HISTORY

Imperial originally filed its Complaint against Sany in the Circuit Court of Cook County, Illinois, Law Division, on December 22, 2014. *See* Removal Not., Dkt. 1, at 1. Sany removed that action to this district on January 28, 2015, asserting diversity jurisdiction under 28 U.S.C. 1332, *id*., and then filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) on February 4, 2015. Dkt. 8. Briefing on this motion proceeded according to this Court's Order of February 10, 2015, Dkt. 15, concluding with Sany's Reply filed March 24, 2015. Three days later, Imperial filed its arbitration demand in Atlanta, in which Imperial admitted that its demand there "includes the claims set forth" here. *See* Dkt. 26-1, at 1. Additional briefing then followed in this action in April 2015, addressing the impact of Imperial's AAA proceeding on the instant motion to dismiss. *See* Dkts. 23-27. Having reviewed all of the parties' briefs on this motion, including that supplemental briefing, the Court now denies Sany's motion to dismiss without prejudice, but stays the instant action while the arbitrability of Imperial's claims is determined in the Atlanta AAA proceeding.

## LEGAL STANDARDS

The Seventh Circuit has made clear that a motion to dismiss based on an arbitration clause is properly asserted as one challenging venue under Fed. R. Civ. P. 12(b)(3), *Faulkenberg*, 637 F.3d at 808, since an arbitration provision "is a type of forum selection clause." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 772 (7th Cir. 2014). And as noted above, a motion under Rule 12(b)(3) requires the Court to

assume the truth of the plaintiff's factual allegations and draw reasonable inferences in its favor, *id*. at 806, but does not limit a district court to the allegations in the plaintiff's complaint. In determining whether venue is proper in this district, this Court thus may consider not only Imperial's Complaint and exhibits, but also the materials submitted with the parties' briefs on this motion, including their Distributor Agreement and its arbitration clause. *See id*. at 809-10 (it is appropriate to consider evidence submitted with motion, including agreement containing arbitration clause).

Neither party disputes these standards. As for the substantive law applicable to Sany's motion, however, the parties disagree. Sany argues that the FAA ultimately "applies to this case because the Distributor Agreement involves interstate commerce," Def. Mem., Dkt. 9, at 5 (citing 9 U.S.C. § 2), but that Georgia law governs any questions concerning contract formation, pursuant to a choice of law provision in the parties' Distributor Agreement. Def. Mem., Dkt. 9, at 5-7. Imperial, on the other hand, while acknowledging that "federal courts apply state-law principles of contract formation," argues that the three purchase orders at issue "do not include selection of law clauses," and thus asserts that "Illinois law applies." Pltf. Resp., Dkt. 18, at 3. The Court agrees with Sany that the FAA governs the arbitrability issue raised by Sany's motion to dismiss.

The parties are correct that the "validity and meaning of a forum selection clause"—which includes an arbitration provision—is generally determined in a diversity case "by reference to the law of the jurisdiction whose law governs the rest

of the contract in which the clause appears." *Jackson*, 764 F.3d at 774-75 (quoting *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007)). "Once it is clear, however, that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). The parties here dispute neither the validity nor enforceability of their Distributor Agreement, or that it requires arbitration of at least some of their disputes. Rather, the instant motion presents a question of arbitrability, which is governed by the FAA, not state law.

"The FAA 'creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 718 (N.D. Ill. 2014) (brackets omitted, quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "To the extent there are conflicts between state arbitration law and the FAA that would contravene the pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws." *Id*. "Thus, 'a general choice of law provision in a contract will not extend to the arbitration clause, absent specific evidence the parties intended it to do so." *Id*. at 718-19. There is no such indication here; to the contrary, the parties' Distributor Agreement provides for "arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association," Dkt. 10 (Distributor Agreement), at § 5.8, as opposed to any state's law.

Imperial tacitly acknowledges as much, insofar as it invokes the FAA to support its request for a stay (as opposed to dismissal) of these proceedings. *See* Pltf. Resp., Dkt. 18, at 12-13 (requesting stay "in accordance with the Federal Arbitration Act 9 U.S.C. § 3"). "Accordingly, the Court will rely on Federal law interpreting the FAA to decide this motion." *Helferich*, 51 F. Supp. 3d at 719 (applying federal law to arbitrability question presented in motion to dismiss based on arbitration clause).

## DISCUSSION

Now turning to the merits of Sany's motion, the Court addresses first Imperial's arguments that disputes relating to its purchases from Sany are not governed by the arbitration provision in the parties' Distributor Agreement, and second, Sany's request to dismiss (rather than stay) the current action.

**I.     Arbitrability**

Sany rightly notes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Def. Mem., Dkt. 9, at 8-9 (quoting *Moses H. Cone*, 460 U.S. at 24-25); *see also Faulkenberg*, 637 F.3d at 808 (same). Imperial correctly counters, however, that parties are required to arbitrate only those issues they agreed to arbitrate. Pltf. Resp., Dkt. 18, at 5; *see also Faulkenberg*, 637 F.3d at 808-09 ("Notwithstanding this strong federal policy in favor of arbitration, the FAA's provisions are 'not to be construed so broadly as to include claims that were never intended for arbitration.'" (quoting *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003)). Imperial contends that the purchase agreements

over which it sues here are thus immune from the arbitration clause in the parties' Distributor agreement for three reasons: (1) the purchase orders at issue are "separate and distinct purchase contracts" that "do not include arbitration clauses," Pltf. Resp., Dkt. 18, at 1; (2) "one of the three purchase contracts could not have incorporated the distributor agreement because it pre-dates that agreement by over 3 months," *id*.; and (3) "the distributor agreement terminated in May of 2013." *Id.*

As to Imperial's argument that its purchase agreements are "separate and distinct" from the parties' Distributor Agreement containing the arbitration clause, *id*., Sany asserts that Imperial's attempt to cast its claims solely under its purchase orders is a "mischaracterization of the parties' dealings," which involved "one Distributor Agreement" and "corresponding purchase orders." Def. Mem., Dkt. 9, at 3-4. Seventh Circuit precedent supports Sany's argument that a party's narrow "characterization" will not evade an arbitration clause, particularly where (as here) the arbitration clause asserted "broadly" covers all matters "arising out of" and "relating to" to the parties' agreement. *Alltel*, 666 F.3d at 1033-36 ("were the rule otherwise, a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims." (quoting *In re Oil Spill by the 'Amoco Cadiz" Off the Coast of France March 16, 1978*, 659 F.2d 789, 794 (7th Cir. 1981)).

Sany similarly contends that such a broad arbitration provision further buttresses application of that clause to both pre-agreement purchase orders (per the Distributor Agreement's integration clause) and "post-termination claims." Def.

Reply, Dkt. 20, at 7 (quoting *Shipp v. XA, Inc.*, No. 06 C 1193, 2006 WL 2583720, at *7 (N.D. Ill. Aug. 31, 2006)). Again, Seventh Circuit precedent is in accord. *See Alltel*, 666 F.3d at 1035 (rejecting argument that plaintiff's claim arose solely out of agreement that did not require arbitration, where claim was "interlinked" with related agreement that required arbitration);[2] *Int'l Union, United Auto. & Aerospace & Agric. Implement Workers of Am. (UAW) v. Young Radiator Co.*, 904 F.2d 9, 10 (7th Cir. 1990) ("the opposite result would encourage [parties] simply seek to avoid arbitration to wait until six months or some other arbitrary period passes before [seeking relief] under an expired . . . agreement"). But as Sany also acknowledges, these arguments are for the arbitrator, not the Court, to resolve. Def. Mem., Dkt. 9, at 7-8.

As noted above, the parties' arbitration clause here requires not merely arbitration, but "arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Dkt. 10 (Distributor Agreement), at § 5.8. Such a provision serves to "incorporate the AAA's rules into the arbitration agreement," including (among others) AAA Rule 7. *Helferich*, 51 F. Supp. 3d at 719-20 (brackets omitted). "Rule 7 of the AAA Commercial Arbitration Rules states, with respect to jurisdiction, that 'the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or

---

[2] Notably, in so holding, the *Alltel v. Gore* court distinguished Imperial's authority here, *Rosenbloom v. Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002), observing that *Rosenblum* involved a "self-contained" agreement and a claim pertaining "exclusively" to that agreement, whereas Gore's claim was "interlinked" with both the agreement containing the asserted arbitration provision and a second agreement that did not. *See Alltel*, 666 F.3d at 1035.

validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" *Id*. (brackets omitted, quoting AAA Rule 7-(a)). "While neither the Supreme Court nor the Seventh Circuit have resolved whether incorporation of the AAA Rules constitutes 'clear and unmistakable' evidence that the parties intended the question of arbitrability to be decided by an arbitrator, other circuits have drawn this conclusion," *id.* (citing cases from the 2d, 8th, 11th, and Federal Circuits), in addition to numerous sister courts in the Seventh Circuit. *See*, *e.g.*, *id*. (citing cases); *Gilman v. Walters*, 61 F. Supp. 3d 794, 801 (S. D. Ind. 2014) (citing cases).

Imperial neither disputes nor even acknowledges this case law. Absent any argument or citations to the contrary, this Court concurs with that "overwhelming majority." *Gilman*, 61 F. Supp. 3d at 801, n.4. "Accordingly, the Court finds that by incorporating the AAA Rules, including Rule 7(a), into the arbitration provision," the parties "clearly and unmistakably agreed to have an arbitrator decide whether they agreed to arbitrate Plaintiff's disputes." *Helferich*, 51 F. Supp. 3d at 720.

## II. Dismissal, versus Stay, of this Action

Having determined that the parties agreed to arbitrate at least some of their disputes, and that the parties' arbitration provision requires the arbitrability of their current disputes to be determined by an AAA arbitrator, there remains only the question of whether to dismiss (as Sany requests) or stay (as Imperial requests) this action. The Court agrees with Imperial that a stay pursuant to § 3 of the FAA is appropriate here, 9 U.S.C. § 3, and that dismissal would not be.

11

"For arbitrable issues, a § 3 stay is mandatory." *Volkswagen of Am., Inc. v. Süds of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007); 9 U.S.C. § 3 ("the court . . . ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had" (emphasis added)). Seventh Circuit precedent correspondingly holds that a stay "is the normal procedure when an arbitrable issue arises in the course of a federal suit," both because a stay is required under § 3 of the FAA, and because "district courts should retain jurisdiction over a suit that must be interrupted for reference of an issue to another forum rather than dismiss it if, should it be dismissed, there might later be grounds for reinstating it." *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002) ("rather than dismiss the present suit the district judge should have stayed it to await the outcome of arbitration in order to spare the parties the burden of a second litigation should the arbitrators fail to resolve the entire controversy"); *Cigna Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851 (7th Cir. 2002) (district court "should not dismiss the proceedings before it" while arbitrability is being determined in another forum).

Sany nevertheless urges dismissal here, because the asserted arbitration provision requires arbitration outside of this district—specifically, in Atlanta, Georgia. Quoting the Seventh Circuit's decision in *Faulkenberg*, Sany asserts that "a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district." Def. Mem., Dkt. 9, at 9

(quoting *Faulkenberg*, 637 F.3d at 808). But the rationale for this directive—that "under § 4 of the FAA, a district court cannot compel arbitration outside the confines of its district," *id.*—is inapplicable here. *See Faulkenberg*, 637 F.3d at 808 ("***In this situation*** . . . a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure" when arbitration is required in a different district (emphasis added)).

"While courts cannot grant a § 4 order to compel arbitration unless they sit in the same district as the arbitration venue, a § 3 order to stay pending arbitration has no such requirement." *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods. Inc.*, 660 F.3d 988, 997 (7th Cir. 2011). Thus, where (as here) an arbitration proceeding has been initiated in the foreign district required by an arbitration clause, § 3 of the FAA provides for a stay of related litigation pending elsewhere "on application of one of the parties," 9 U.S.C. § 3, just as Imperial has requested here. *See* Dkt. 18 at 12-13; *see also GEA Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 414 (7th Cir. 2014) (acknowledging prior order that "case should be stayed pending arbitration" in Germany); *EZLinks Golf, Inc. v. Brown*, No. 12 C 3630, 2013 WL 1285651, at *2 (N.D. Ill. Mar. 27, 2013) (once an action to compel arbitration is brought in appropriate district, defendant "may then file a motion asking this Court to stay this case pending resolution of the arbitration issues in" that other district).[3]

---

[3] Sany's authority, *Johnson v. Orkin, LLC*, 556 Fed. Appx. 543 (7th Cir. 2014) (unpublished), is not to the contrary. As other courts have noted, "the plaintiff in *Johnson* did not request a stay," thus rendering "the FAA's mandate" of a stay "on

Imperial's request for a stay additionally requires consideration of potential "statute of limitations arguments previously raised by Defendant." *See* Pltf. Resp. to Supp., Dkt. 27, at 2 ("before this lawsuit was filed, said counsel raised statute of limitations issues with Imperial Crane's claims"); *cf. Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 725 (7th Cir. 2004) (district court abused discretion by dismissing, rather than staying, action, where "plaintiffs notified the court that there may be statute of limitations problems if the case [was] dismissed for lack of prosecution"). For this reason, as well as "the FAA's mandate," *Williams-Bell*, 2014 WL 7499398, at *3, the Court denies Sany's motion to dismiss and grants Imperial's request for a stay pursuant to 9 U.S.C. § 3. Sany's motion to dismiss is denied without prejudice, however, and may be reasserted in the event the AAA proceeding in Atlanta does not "resolve the entire controversy." *Tice*, 288 F.3d at 318. In that event, the Court will determine whether the stay should be lifted in whole or in part. *See French v. Wachovia Bank*, 574 F.3d 830, 835 n.6 (7th Cir. 2009) ("when a district court determines whether to stay arbitrable issues while allowing litigation of nonarbitrable issues to proceed, the court should consider 'the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays'" (quoting *Volkswagen*, 474 F.3d at 972)).

---

application of one of the parties" inapplicable. *Williams-Bell v. Perry Johnson Registrars, Inc.*, No. 14 C 1002, 2014 WL 7499398, at *3 (N.D. Ill. Jan 8, 2014) (quoting 9 U.S.C. § 3, and citing *Cramer v. Bank of Am., N.A.*, No. 12 C 8681, 2013 WL 2384313, at * 4 (N.D. Ill. May 30, 2013)).

## CONCLUSION

For the foregoing reasons, the Court denies without prejudice Defendant Sany America, Inc.'s motion to dismiss this action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). *See* Dkt. 8. At the request of Plaintiff Imperial Crane Sales, Inc., this action is stayed pursuant to 9 U.S.C. § 3 pending the AAA arbitration proceeding initiated by Imperial in Atlanta, Georgia.

_____
Dated: July 15, 2015                  Charles P. Kocoras
                                      United States District Judge